**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 26-cv-03625-NYW-MDB

MICHAEL SMITH,

Plaintiff,

v.

COLORADO SPRINGS SCHOOL DISTRICT 11,

Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Plaintiff's Amended Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited § 1415(j) Determination ("Amended Motion for Stay Put Order"). [Doc. 9, filed August 10, 2026]. Defendant Colorado Springs School District 11 ("Defendant" or "the District") has responded, [Doc. 20], and Plaintiff Michael Smith ("Plaintiff" or "Mr. Smith") has replied, [Doc. 21]. The Parties appeared before the Court on August 18, 2026, and neither side requested an evidentiary hearing. [Doc. 22]. Upon consideration of the Parties' papers, the entire docket, and the applicable case law, this Court respectfully **DENIES** the Amended Motion for Stay Put Order.

## BACKGROUND

During the 2025–2026 school year, Mr. Smith's son, R.S., attended twelfth grade as a 17-year-old at Thomas MacLaren Upper School ("MacLaren") pursuant to an

Individual Education Plan[1] promulgated under the Individuals with Disabilities in Education Act ("IDEA" or "Act"), 20 U.S.C. §§ 1400–82. *See* [Doc. 1-3 at 1]. R.S.'s IEP dated October 7, 2025 ("Operative IEP") includes sections that discuss required services as well as post-school goals for R.S. *See, e.g.*, [*id.* at 28–29, 40]. Specifically, the Operative IEP identifies R.S.'s placement as participation in a "general education class 40% to 79% of the time," and to receive the following direct services: (1) 60 minutes monthly out of the general education setting for Speech/Language services; (2) 120 minutes weekly out of the general education setting for Specialized Social/Emotional Instruction; (3) 300 minutes weekly out of the general education setting for Specialized Math Instruction; and (4) 600 minutes weekly out of the general education setting for Specialized Literacy Instruction. [*Id.* at 40–41]. With respect to indirect services, including case management, the Operative IEP requires: (1) 30 minutes indirect services per month for Specialized Social/Emotional Instruction; (2) 30 minutes indirect services per month for Specialized Math Instruction; and (3) 30 minutes indirect services per month for Specialized Literacy Instruction. [*Id.*]. For post-school considerations, the Operative IEP sets as an education/training goal that R.S. "will participate in 18-21 services through [the District] and complete paraprofessional training." [*Id.* at 28]. The Operative IEP further reflects Mr. Smith's desire for R.S. "to participate in District 11's Paraprofessional program via Career Pathways at Wasson." [*Id.* at 20].

[1] "An IEP is a written statement of (1) the child's present performance level, (2) the goals and instructional objectives to be attained, (3) the specific educational services to be provided, (4) the child's needed transition services, (5) the projected dates for initiation and completion of such services, and (6) the criteria and procedures to be used to assess progress toward the instructional objectives." *Urban by Urban v. Jefferson Cnty. Sch. Dist. R-1*, 89 F.3d 720, 722 (10th Cir. 1996) (citing 20 U.S.C. §§ 1414(a)(5), 1401(a)(20)).

The District proposed a new IEP dated May 8, 2026 ("Proposed IEP") to address R.S.'s post-school services. [Doc. 1-10]. The Proposed IEP continues to reflect the same amounts of general education class time and direct and indirect services, but adds 780 minutes weekly of Transition Services. [*Id.* at 45–46]. The Proposed IEP indicates that MacLaren does not offer an 18-21-year-old transition program, but that the District was "ready, willing, and able to provide the required transition services at the R.J. Wasson Academic Campus [("Wasson")] or a community location." [*Id.* at 48]. The District offered R.S. placement at Wasson for the 2026–2027 year in the S.T.R.I.V.E. program, an 18-21 transition program. [Doc. 15 at ¶ 2]. But the District informed Mr. Smith that it was not offering a formal paraeducator program for the 2026-2027 year because it was canceled due to low enrollment. [Doc. 1-21 at ¶ 13]. Mr. Smith objected to the Proposed IEP on various grounds and requested that R.S. remain at MacLaren. [Doc. 1-11 at 1]. The District rejected that option because "MacLaren is a K-12th campus and does not offer an 18-21-year-old Transition program." [Doc. 1-12 at 2; Doc. 1-22 at ¶¶ 4–5].

Unable to resolve his concerns with the District, Mr. Smith filed a due-process complaint challenging the Proposed IEP with the Colorado Department of Education on July 10, 2026. [Doc. 15 at ¶ 16]. On July 23, 2026, Mr. Smith and R.S. filed Petitioners' Combined Motion and Brief to Enforce [R.S.'s] Pendency (Stay-Put) Placement Under 20 U.S.C. § 1415(j), and Request for Expedited Ruling ("Administrative Motion for Stay Put Placement") in the Colorado Office of Administrative Courts ("OAC"). [Doc. 1-18]. The District responded to the Administrative Motion for Stay Put Placement on August 3, 2026. [Doc. 9-2 at 1]. Before the Administrative Law Judge ("ALJ") ruled, Mr. Smith, proceeding pro se, initiated this action against the School District on August 7, 2026, with a single

claim seeking a "stay put" order to maintain his son's placement at MacLaren until the resolution of the due process complaint. [Doc. 1]. At the same time, Mr. Smith filed an Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited § 1415(j) Determination, seeking the same "stay put" order ("Original Motion for Stay Put Order"). [Doc. 2].

On August 10, 2026, the ALJ denied Administrative Motion for Stay Put Placement. [Doc. 9-2]. That same day, Plaintiff filed the instant Amended Motion for Stay Put Order, mooting the Original Motion for Stay Put Order, but seeking an order requiring the District to maintain R.S.'s placement and services at MacLaren until the resolution of the due process complaint. [Doc. 9; Doc. 18]. On August 12, 2026, Mr. Smith filed an Amended Complaint as a matter of right, seeking the same relief. [Doc. 15]. This Court set and convened a Status Conference on August 18, 2026. [Doc. 17; Doc. 22]. Prior to the August 18 Status Conference, Defendant responded to the Amended Motion for Stay Put Order, [Doc. 20], and Plaintiff replied. [Doc. 21]. This matter is ripe for determination.

**ANALYSIS**

Section 1415(j) of the IDEA provides:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518. Often referred to as the "stay put" provision, its general purpose is to prevent school districts from unilaterally changing in a student's educational program during the pendency of IDEA proceedings. *See Jefferson*

*Cnty. Sch. Dist. R-1 v. Elizabeth E. ex rel. Roxanne B.*, 862 F. Supp. 2d 1138, 1146 (D. Colo. 2012) (citing *Erickson v. Albuquerque Pub. Schs.,* 199 F.3d 1116, 1121 (10th Cir.1999)). As recognized by the Tenth Circuit, "[t]his provision serves in essence, as an automatic preliminary injunction," and replaces the typical four-factor test for injunctive relief. *Smith v. Cheyenne Mountain Sch. Dist. 12* (*Smith I*), 652 F. App'x 697, 700 (10th Cir. 2016) (internal quotation marks omitted) (quoting *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 118 (3d Cir. 2014)). The operative determination for this Court is what constitutes the student's "then-current educational placement."

As the Tenth Circuit and courts across the country have observed, the IDEA does not define "then-current educational placement." *See Smith*, 652 F. App'x at 700; *Smith v. Cheyenne Mountain Sch. Dist. 12* (*Smith II*), No. 19-cv-2345-WJM-KMT, 2019 WL 4201503, at *3 (D. Colo. Sept. 5, 2019). The Tenth Circuit has held that "[a]n educational placement is changed when a fundamental change in, or elimination of, a basic element of the educational program has occurred." *Erickson*, 199 F.3d at 1122. As courts in this District have observed, a specific school is sometimes part of the then-current educational placement, but frequently it is not. *Smith II*, 2019 WL 4201503, at * 3 (collecting cases). Here, while MacLaren is identified as R.S.'s "School of Attendance," [Doc. 1-3 at 1], there is no indication that his placement at MacLaren is a basic element of his Operative IEP. *See* [Doc. 1-3 at 39–41]. Nor is there any contemplation that R.S. is anticipated to, or even could, remain at MacLaren for 18–21 transitional services. [*Id.* at 25–28]. Instead, the section that discusses Post-School Considerations indicates that R.S. "will participate in 18-21 services through D11 and complete paraprofessional training," and "R.S. will be employed at a school." [*Id.* at 28]. It does not mandate what type of paraprofessional

training or school employment will be available to R.S. [*Id.*]. Neither the IDEA nor the Operative IEP entitles R.S. to placement at a certain school, with a particular type of paraprofessional training or school employment. *Cf. Urban,* 89 F.3d at 727 (concluding that student received an adequate education under the IDEA where he only asserted a right to "transition services in a specific location," without challenging the quality of those services). Indeed, because Mr. Smith brought the due process challenge in July 2026 after the close of the 2025–2026 year and the completion of R.S.'s twelfth-grade year, 18–21 services is the status quo contemplated by the Operative IEP for R.S.'s 2026–2027 placement. *Cf. N.E. ex rel. C.E. & P.E. v. Seattle Sch. Dist.*, 842 F.3d 1093, 1098 (9th Cir. 2016).

Further, applying the standard set forth in *Erickson*, this Court concludes that the District's offered placement of R.S. at Wasson is not a fundamental change in, or elimination of, a basic element of the educational program as set forth in the Operative IEP. Deidre Shearer ("Ms. Shearer"), the District's Chief of Student Experience and Success, averred that "S.T.R.I.V.E.'s curriculum provides instruction and support in employment readiness and vocational exploration; clerical-task skills, including filing, shredding, alphabetizing papers, and using a copy machine; communication and social skills; functional literacy and mathematics; independent-living skills; financial literacy and budgeting; self-advocacy and self-determination; and community participation, including community-based vocational experiences at locations in the Colorado Springs area." [Doc. 1-21 at ¶¶ 2, 5]. Ms. Shearer further declared that "[f]rom the first day of the 2026-27 school year, S.T.R.I.V.E. can and will deliver to [R.S.] every service quantity in his October 7, 2025 IEP: 600 weekly minutes of specialized literacy instruction; 300 weekly

minutes of specialized math instruction; 120 weekly minutes of specialized social/emotional instruction; 60 monthly minutes of direct speech/language services; and 90 monthly minutes of indirect consultative services (30 monthly minutes each for literacy, math, and social/emotional instruction)." [*Id.* at ¶ 9]. Finally, Ms. Shearer declares that

> Under the schedule prepared for Student, he would receive 204 minutes per day of special education services 45% of his school day and would spend 55% of his school day in general education settings, including vocational opportunities, within the 40% to 79% general education environment identified in his October 7, 2025 IEP. Student would attend on Wasson's full bell schedule: 9:30 a.m. to 2:55 p.m. on Mondays, and 7:30 a.m. to 2:55 p.m. Tuesday through Friday.

[*Id.* at ¶ 10]. This Court finds that the S.T.R.I.V.E. Program can meet the requirements of R.S.'s Operative IEP. Plaintiff's objection to the terminology of "settings" instead of "classes" and dissatisfaction with the specific implementation of paraprofessional training, *see generally* [Doc. 21], does not amount to a fundamental change in, or elimination of, a basic element of the educational program as set forth in the Operative IEP.

Even if the Court held that MacLaren or the formal paraeducator program was the "then-current educational placement," they are functionally unavailable because it is undisputed that MacLaren does not provide 18–21 transition services and the program is not being offered. [Doc. 1-22 at ¶¶ 4–5; Doc. 1-21 at ¶ 13]. The Fourth Circuit, in considering a §1415(j) injunction in an analogous context where the "then-current educational placement" was no longer functionally available, held that plaintiffs simply then cannot benefit from a § 1415(j) injunction, and that the district court erred when it ordered the school board to fashion an alternative interim placement for the student. *See Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 302 (4th Cir. 2003). Although it acknowledges Mr. Smith's long-standing and well-intentioned pursuit of the appropriate

services for R.S., this Court respectfully concludes that neither the IDEA nor § 1415(j) permits this Court to order the District to fashion an entirely separate program to provide 18–21 transition services for R.S. during the adjudication of Plaintiff's due process complaint before OAC.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Plaintiff's Amended Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited § 1415(j) Determination [Doc. 9], is **DENIED**;

(2) Because the § 1415(j) determination sought in the Amended Motion for Stay Put Order is the same as the sole claim in the Amended Complaint, [Doc. 15 at 4–5], the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff and terminate this case[2]; and

(3) Defendant is awarded its costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED: August 26, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge

[2] *See* Fed. R. Civ. P. 58(b)(1)(C) (instructing that judgment must enter when "the court denies all relief"); *Smith II*, 2019 WL 4201503, at *7 (ordering judgment against the plaintiff after denying the § 1415(j) injunction that was the sole cause of action in the case).